```
 1                    UNITED STATES DISTRICT COURT
                      NORTHERN DISTRICT OF OHIO
 2                         WESTERN DIVISION

 3   UNITED STATES OF AMERICA,    )  Docket No. 3:10CR431

 4            Plaintiffs,         )  Toledo, Ohio

 5               v.               )  July 3, 2012

 6   ANTHONY WILLOUGHGY,      )  Sentencing

 7            Defendants.         )

 8   -----------------------------

 9        TRANSCRIPT OF EXCERPT OF SENTENCING HEARING
             BEFORE THE HONORABLE JACK ZOUHARY
10                UNITED STATES DISTRICT JUDGE

11

12   APPEARANCES:

13   For the Plaintiffs:  James V. Moroney, Jr.
                          Ava Rotell Dustin
14                        Office of the U.S. Attorney
                          Four SeaGate, Suite 308
15                        Toledo, Ohio 43604
                          (419) 242-5675
16

17   For the Defendant:
                          Spiros Cocoves
18                        610 Adams Street
                          Toledo, Ohio 43604
19                        (419) 241-5506

20
     Court Reporter:      Angela D. Nixon, RPR, CRR
21                        1716 Spielbusch Avenue
                          Toledo, Ohio 43624
22                        (419) 260-5259

23   Proceedings recorded by mechanical stenography, transcript

24   produced by notereading.

25
```

```
 1            THE COURT:  Please be seated everyone.  Good
 2   morning.  I apologize for the delay.  We are here on case
 3   number 3:10CR431, United States versus Anthony Willoughby.
 4            The defendant is present in court along with his
 5   counsel, Spiros Cocoves.  On behalf of the government we
 6   have Assistant U.S. Attorney Jim Moroney and Ava Dustin.
 7   And we have present at the government table Jack Hardy,
 8   right?
 9            AGENT HARDIE:  Jake Hardy.
10            THE COURT:  Thank you, Jake.  And is Peter Swartz
11   here?  He is in the back, okay.  I'll acknowledge him as
12   well.  We have from pretrial services and probation Myrna
13   Greenwood.
14            This sentencing hearing was continued from last
15   week to allow additional filings on behalf of the parties,
16   and I want the record to reflect that I have received, and
17   I thank counsel for their supplemental sentencing memos
18   reflected on the docket as document numbers 118 and 119.
19            Attached to the defendant's supplemental
20   sentencing memo is a document that was sent to me, and also
21   apparently sent to counsel.  It's attached to that memo,
22   and it is the defendant's pro se objections.  And I have
23   addressed those objections, and in order that either has
24   been or will be filed.  I shared it with all counsel for
25   all sides.  It is document number 120.  And it is captioned
```

```
 1    Order Regarding Defendant's Supplemental Objections.  I

 2    believe, therefore, that I have addressed all the

 3    objections that have been filed in this matter, and there

 4    have been numerous, and I have attempted to do a response

 5    in writing so that everyone in advance of the hearing would

 6    understand where we stood.

 7             Let me continue with some preliminary remarks.  A

 8    presentence report has been prepared by our probation

 9    department, a presentence department (sic).  That report is

10    dated January 19 of this year with the revision date of

11    June 22.  That report reflects that the defendant is found

12    guilty in a single count of sex trafficking of a minor, and

13    the penalty for that is the minimum of 15 years up to life

14    in prison, a $250,000 fine and five years to life on

15    supervised release.  The defendant has been arrested as of

16    October 6th, 2010 and was detained by Magistrate Judge

17    Armstrong at that time and he has been detained

18    continuously since then.

19             So for starters, let me confirm with all sides

20    that they've had an opportunity to review the presentence

21    report, including the revisions, they've had an opportunity

22    to advise pretrial services and The Court of objections.

23    And before counsel, also let me confirm that they've

24    reviewed the report and discussed it with their respective

25    clients, and finally, let me confirm the guideline range in
```

1   this case.  And we're looking at a total offense level of

2   40, a criminal history category of six for a guideline

3   range of 360 months to life.  And as I've already indicated

4   a statutory mandatory minimum of 15 years to life.

5         So counsel, please confirm with me those several

6   matters as well as the math that I've just summarized.

7         MR. MARONEY:  Your Honor, on behalf of the United

8   States we have read the report, reviewed it, we have no

9   objections, and we are in agreement with the guideline

10  range as stated by you.

11        THE COURT:  Thank you.  Spiros?

12        MR. COCOVES:  Judge, yes, we too have reviewed

13  the report, and, again, we have objections to those

14  findings, and The Court has overruled those.  And based on

15  The Court's ruling, that would be the correct guideline

16  range.

17        THE COURT:  Thank you.  I'll make a note that

18  the -- well, first let me confirm with you, Mr. Willoughby,

19  that you've have had an opportunity to review the report

20  and revisions, you've had an opportunity to provide The

21  Court with comments and your objections to that report, am

22  I correct.

23        THE DEFENDANT:  Well, I have an issue with that,

24  Your Honor.  Last week, last Tuesday, there seems to be a

25  due process violation.

```
 1            THE COURT:  Does that have to do with the report?

 2            THE DEFENDANT:  Yes.  Yes.  I don't see how there

 3   was an order issued on objections when I didn't -- when I

 4   received the revised PSR less than 24 hours before

 5   receiving that order, and I was not given the opportunity

 6   to appear and present evidence that supports my objections,

 7   physical evidence, that supports my objections at the

 8   hearing.

 9            THE COURT:  I'm trying to follow you.  You mean

10   at the last hearing?

11            THE DEFENDANT:  Tuesday, last Tuesday, yes, sir.

12            THE COURT:  Okay.  It was my understanding that

13   given the date of the revision to the report, which was

14   June 22, and the proximity of the hearing that we continued

15   the hearing to allow both sides an opportunity, if they

16   wish, to comment on the revisions of the report.  And as

17   I've indicated, I have issued written rulings on those

18   objections, both just prior to the last hearing and just

19   prior to the hearing today.  You, it seems to me, had an

20   opportunity based on the attachment to the supplemental

21   sentencing memo, you had an opportunity to review that

22   report again, and you had an opportunity to present The

23   Court your objections and comments on that report.  That's

24   filed.  It's of record, and my response to it is also filed

25   and of record.  So what further evidence, or what else do
```

 1    you wish to present to The Court with respect to --

 2              THE DEFENDANT:  Well, I actually have --

 3              THE COURT:  -- the revised report?

 4              THE DEFENDANT:  I actually have the historical

 5    sentencing guidelines which clearly show that the six point

 6    enhancements, the four are impermissible double counting

 7    which is in the historic sentencing guidelines of the 2008

 8    Adam Walsh Act that were amended November 1st, 2009.  It's

 9    clearly in there stated.  I clearly have the statute of

10    conviction from my 2005 conviction out of Ohio, which I

11    just read the report and it says that that was properly

12    authenticated.  But I actually have a copy right here, and

13    it has not been authenticated.

14              THE COURT:  Well, if you wish to present me with

15    the paper you have on your 2005 conviction, I will share it

16    with Myrna.  We'll have a look at it, and we'll see whether

17    or not, in fact, that conviction is improperly recorded in

18    your presentence report.  So we can take care of that right

19    now with respect to your objections to the enhancement.

20    The Court understands your arguments, I respectfully

21    disagree with your arguments.  I have overruled that

22    objection, and as I've indicated, those enhancements will

23    apply.  And I don't know if you have anything new or

24    different in that regard, I'm happy to hear that, but you

25    have had several opportunities to discuss those

1    enhancements, and you and I will just have to agree to

2    disagree about this.

3         THE DEFENDANT:  I was under the assumption that

4    my attorney is my voice, so my attorney and myself have

5    been just fighting back and forth about this because I'm,

6    like, I want my evidence proffered.  If the government can

7    present evidence, so should I.  So he tells me, and I

8    quote, well, you're not getting a fair shot at this.  This

9    is the government's arena and they pay the refs.  So what

10   am I supposed to do when an attorney tells me something

11   like that?

12        THE COURT:  Well, Mr. Willoughby, you've had an

13   opportunity during the course of this entire case to speak,

14   and you've done that, and you've done it well on your

15   behalf.  If you have something you wish to share with me

16   today, whatever took place before today, I have no comment

17   on between you and your lawyer.  I will note that your

18   lawyer has made filings on your behalf and has given to The

19   Court all the filings that you have prepared on your own

20   behalf.  So if you have something in addition that you wish

21   me to consider, if it's appropriate, I will take a look at

22   it.  And if it's not appropriate, I'll tell you so.

23        THE DEFENDANT:  Yes, I do.

24        THE COURT:  Okay.

25        THE DEFENDANT:  I'm getting out the conviction --

```
 1                    (Mr. Willoughby and defense counsel having

 2                     an off-the-record discussion.)

 3              MR. COCOVES:  Your Honor, what he's -- what

 4    Mr. Willoughby has, Judge --

 5              THE COURT:  I'm sorry, is your mic on, Spiros?

 6              MR. COCOVES:  I'm sorry.

 7              THE COURT:  Thank you.

 8              MR. COCOVES:  What Mr. Willoughby's referring to

 9    is the judgment entry signed by Judge Charles Wittenberg on

10    February 25th, 2005.  The copy we have comments on it which

11    I don't think that we would care to share just because for

12    various reasons.

13              THE COURT:  Personal comments you mean?

14              MR. COCOVES:  Yes.  Yes.  Yes.

15              THE COURT:  Not official comments on the record?

16              MR. COCOVES:  No, no, just comments on the

17    contents of what -- and then there's also a copy of the

18    statute in effect at the time, and in addition, materials

19    from, again, that has handwriting on it.  And do you mind

20    if he sees these?

21              THE DEFENDANT:  No, not at all.  I encourage it.

22    It should be made part of the record.

23              MR. COCOVES:  On behalf of Mr. Willoughby, Judge,

24    we're asking The Court to accept this as an exhibit.  What

25    we'd like to do is exchange those by the close of business
```

1    today with clean copies.  We can fax them over without the

2    writing on them.

3              THE COURT:  And are you referring to everything

4    that I was just handed or just the Common Pleas Court,

5    Lucas County Judgment Entry?  The other matters look to be

6    personal notes of someone, one or the both of you, and I

7    don't know if you want those made part of the record.

8              MR. COCOVES:  No, what I'm suggesting is the

9    court refer to the -- refer to it without the

10   handwritten -- we can substitute these, unless there's an

11   objection from the government, with copies that are --

12             THE COURT:  I understand.

13             MR. COCOVES:  -- without handwriting on them.  I

14   think that's clear.

15             THE COURT:  So do you want everything submitted

16   or just the judgment entry without the handwritten notes?

17   Obviously you want the clean copy, I assume, of the

18   judgment entry?

19             MR. COCOVES:  Correct, yes.

20             THE COURT:  Is that right, Mr. Willoughby?

21             THE DEFENDANT:  Yes, sir, the judgment --

22             THE COURT:  That's not a problem.  We can do

23   that.  I should indicate that I've been handed the Judgment

24   Entry file stamped February 25, 2005, Common Pleas Court

25   Lucas County.  And Judge Wittenberg was The Judge at that

1    criminal matter, and it indicates that on February 24,

2    2005, a sentencing hearing was held, and the defendant was

3    convicted of possession of crack cocaine and trafficking in

4    cocaine.  And it cites the respective statutes that those

5    charges violated.  And it is, by my quick glance,

6    consistent with paragraph 55 of the presentence report

7    which discusses this case and the sentence in that case.

8    I'm happy to have this document added to the record in this

9    case.  Does the government wish to see this judgment entry?

10   You may.  But ignore the handwriting, please.

11           And I understand, Mr. Willoughby, that one of

12   your objections which I addressed in document number 120,

13   was that you felt that the conviction referenced in

14   paragraph 155 of the PSR was not authentic or not valid.  I

15   would suggest that the document you have just provided The

16   Court, in fact, reinforces that paragraph of the

17   presentence report.

18           THE DEFENDANT:  Yes.

19           THE COURT:  Anything further that you wish to

20   provide The Court that has not been provided to date?

21           THE DEFENDANT:  Well, my -- I'm not clear if I'm

22   entitled to provide it or not, but it's case law.  I don't

23   know how that works.  The case law that supports, and you

24   have the, I believe Mr. Cocoves passed you a historical

25   sentencing guideline also.

1           THE COURT:  As part of the package that was just

2     handed to me?

3           THE DEFENDANT:  Yes, sir.

4           THE COURT:  These are items that you referenced

5     in earlier filings with The Court?

6           THE DEFENDANT:  Yes, sir, but I just wanted to

7     actually place the actual -- I don't know -- I don't know,

8     you know.

9           THE COURT:  It's not really necessary to place in

10    the record the statutes or the cases.  The fact that you

11    have cited them and the fact that I have access to them

12    here is sufficient, so it is not necessary that you provide

13    those to The Court or that they be made part of the record.

14    If I was unable to find something I certainly would have

15    let you or your lawyer know that I couldn't find a case or

16    citation, but I believe I understood the arguments you've

17    made to date.  So it is not necessary to pile on, so to

18    speak, with additional paperwork at this point certainly.

19          THE DEFENDANT:  Okay.  The criminal damaging

20    statute, we do have in our evidence what that actual

21    offense actually was with the police report.  My prior

22    counsel never gave me a copy of that police report, but

23    it's in the attorney's records.  And I would request that

24    that be made part of the record to show that that one point

25    for that criminal damaging doesn't apply for that issue as

```
 1    well for the reason of what the actual offense was.

 2              THE COURT:  And again, you've made that argument

 3    in your prior filings, and that is referenced in paragraph

 4    49 of our presentence report.  And there is a summary there

 5    of that situation.  Frankly, I believe that single point

 6    was appropriately calculated under guideline section 4A

 7    1.1(c).  And in any event, that one point wouldn't make a

 8    difference, frankly, in the guideline range in this case

 9    and the number of points that you have been assigned.  So

10    I'm not sure it takes you anywhere, in other words, if the

11    argument takes you anywhere because a criminal history

12    category four is made up of those with points of seven,

13    eight or nine.  You had eight points.  Even if we took away

14    one point you'd still be in that same critical history four

15    which perhaps is a moot issue which with the career

16    offender you're up to a six.  Even if the career offender

17    didn't apply, you'd still be a four.  And your objection

18    has been noted, and, again, even though I've overruled it,

19    it is part of record in this case and is available for

20    review on appeal.

21              THE DEFENDANT:  Okay.  So what about the issue of

22    me not being able to appear at that hearing?

23              THE COURT:  Appear at what hearing?

24              THE DEFENDANT:  That's what I'm saying.  I don't

25    know -- I don't know what happened.  I don't know how an
```

 1    order was issued on objections when I didn't have a chance

 2    to review the revised PSR.  That's what I'm saying.  I

 3    don't know what happened.

 4          THE COURT:  Now I've lost you.

 5          MR. COCOVES:  What Mr. Willoughby's saying,

 6    Judge, is that the revised presentence report was issued on

 7    the Friday before the Tuesday hearing.

 8          THE COURT:  Correct.

 9          MR. COCOVES:  And The Court made its rulings

10    based on, in part at least, on that revised PSR, which we

11    did not have a chance to review before the -- we didn't

12    have a chance to comment on those to The Court prior to The

13    Court making its ruling on those objections.

14          THE COURT:  Well, what I did have before me and

15    what I ruled on were the objections that were filed by the

16    defendant prior to that hearing on the original presentence

17    report.  And I issued my order taking into account those

18    arguments.  Some of the revisions were made by pretrial

19    services, probation, presentence, some were not, some of

20    your objections were sustained.  Some were not.  And I

21    incorporated all of that in my last order.  And since then

22    you have had the opportunity to review that presentence

23    report with whatever changes were or were not made based on

24    your objections and my rulings and have had an opportunity

25    and had an opportunity today, as well as by the extensive

```
 1    filing attached to your supplemental sentencing memo, to

 2    again renew some of those objections and make other

 3    objections that you chose fit to make.  So I'm not

 4    understanding how you haven't had an opportunity to be

 5    heard both orally here today and in writing extensively

 6    both prior to the last hearing as well as prior to this

 7    hearing today.

 8              THE DEFENDANT:  Well, I agree that you just did

 9    take care of that issue for me just now.

10              THE COURT:  Okay.

11              THE DEFENDANT:  I agree with you on that.

12              THE COURT:  Thank you.

13              THE DEFENDANT:  One other issue that I have that

14    I would just like clarification on because I don't know is

15    from my understanding the PSR is to -- is to contain facts

16    from the trial and not allegations from the agent from his

17    FD-302s that are unsworn.  And my objection has been the

18    whole time with the PSR is the majority of all of those

19    paragraphs in the PSR is not what Shenae Wells testified to

20    at trial, but is, rather, what one of the agents stated in

21    his unsworn FD-302s.  So my concern is it seems like

22    they're trying to wash away the very noodly trial testimony

23    and replace it with that of the agent's story and unsworn

24    FD-302s.

25              THE COURT:  Let me indicate that the presentence
```

1  report is allowed to contain statements from FBI agents,

2  just as it is allowed to contain statements and does

3  contain statements from you that are unsworn.  And I will

4  indicate here now, as I have in the supplemental order

5  which was filed this morning, that I am well aware of the

6  trial testimony in this case.  I was present during the

7  trial, and I've re-read the trial transcript.  And most of

8  the so-called differences that you made note of in your

9  writing and here again between the FBI interviews and the

10  trial testimony are minor or immaterial in my view.  And I

11  will further note that none of them affect the guideline

12  calculation in this case.

13          Further, I will assure you, Mr. Willoughby, that

14  my sentence in this case is going to be based on the sworn

15  testimony at the trial, and any other sworn testimony that

16  may come in and your writings that you have submitted to

17  The Court will preserve any error that you believe flows

18  from matters in the presentence report that might differ

19  between the FBI interview statements and the testimony at

20  trial.

21          THE DEFENDANT:  Okay.  Thank you.

22          THE COURT:  Sure.  Let me hear from the

23  government.  Do you have anything to add on that point by

24  the way --

25          MR. MARONEY:  Your Honor, the statute provides

1   that there's no limit on the information that can be

2   supplied to The Court in terms of sentencing.  We are

3   entitled to provide to the probation officer the offense

4   conduct through whatever materials we want, and those

5   include 302s and witness statements, so again, we agree

6   with what you just said, Your Honor.

7           THE COURT:  Any other preliminary matters,

8   Mr. Willoughby?

9           THE DEFENDANT:  Yeah.  What Mr. Moroney said

10  would that mean that I would also have the right to

11  introduce 302 statements as well?

12          THE COURT:  You have 302 statements?

13          THE DEFENDANT:  From the witnesses who testified

14  at trial that are completely contradictory to -- you

15  understand what I'm saying?

16          THE COURT:  I do.  And again, I will say that the

17  presentence report tries to provide The Judge with a

18  complete picture of the defendant who is appearing in the

19  case, and as you know, it goes into some detail and goes

20  fairly far back and covers family matters, educational

21  matters, employment matters, certainly matters that were

22  not discussed at the trial of this case.  So there are

23  matters that are set forth in here.  You have had the

24  opportunity and have, in fact, indicated your objections to

25  those parts of the report that you disagree, and that's

1    fine, and that's all in the record.  You've had an

2    opportunity to talk with the writer of this report and give

3    her your version of the facts.  That's in here as well.

4    And so both sides have had an opportunity to provide me

5    with what they believe are important facts for me to know

6    prior to the sentence.  And you have clearly indicated to

7    me that you disagree with a number of the facts set forth

8    in the report and a number of the conclusions.  And the

9    record contains that.  It's there.  And I'm not sure how

10   much further we need to beat that horse.

11           I don't know if you have anything new to offer

12   that you haven't yet offered The Court either through your

13   counsel, through a hearing, in writing.  If you have

14   something new that you believe has not been disclosed to

15   date, let's hear it or let's see it.  But if it's something

16   we've already covered at least once before, I'm going to

17   suggest we move on.

18           THE DEFENDANT:  Okay.  What about the FD-302 from

19   Shenae Wells when she recanted this story June 16, 2009 and

20   the 2008 false accusation on the gentleman -- I think those

21   are very important as far as sentencing goes because that,

22   you know, these are things that was not presented to the

23   trial, just as the government introduced FD-302s of things

24   that were not introduced at trial that I should have had

25   the right to introduce in the PSR like, hey, you know,

```
 1   okay, the jury found me guilty, but these are factors that
 2   the jury was not made aware of because of whatever reason.
 3   That should have a major part to play with, you know, the
 4   fact that she did recant at one time and the fact that she
 5   did make a false accusation before and, you know, can I
 6   introduce that?  That's what I have been asking my
 7   attorney.
 8               THE COURT:  Well, my short answer is the trial is
 9   past, but Mr. Moroney is standing up and I think ready to
10   address --
11               MR. MARONEY:  Your Honor, I just want to be sure
12   that the record is clear.  We've had this discussion with
13   counsel.  Shenae Wells did not recant in the June 16th
14   note.  It's been explained to this defendant.
15               THE DEFENDANT:  He's not being truthful.
16               THE COURT:  Just a moment.  I give you the
17   courtesy of speaking.  We're going to give everyone the
18   courtesy of speaking without interrupting, please.
19               THE DEFENDANT:  I apologize.
20               MR. MARONEY:  He's been told this and he keeps
21   coming back to it and coming back to it.  What Ms. Wells
22   was talking about was information she gave to the agents
23   about where she was immediately prior to June 16, and she
24   says that that information that has been provided was not
25   correct.  In no way, shape or form did Shenae Wells -- was
```

1    she referring to the whole story about what this defendant

2    did to her up to March 19 of 2009.  So we keep hearing this

3    and hearing this, and I just want to be sure that the

4    record is clear of that, that that is not any kind of a

5    recantation that affects the trial of this case.

6         THE COURT:  So we have now made record of this

7    disagreement between both sides, and Mr. Willoughby, it's

8    being recorded by our court reporter to date.  It will be

9    part of the hearing transcript for today, and at this

10   juncture we'll let it stand as it is.  You two disagree,

11   and it is what it is, and the trial has been concluded.

12   And these are frankly matters that are more appropriate not

13   for sentencing but for appeal.

14        MS. DUSTIN:  Just one note, Your Honor, about the

15   2008 allegation the defendant referred to, the prior

16   alleged allegation of a rape.  We discussed that with trial

17   counsel in chambers, and any information related to that

18   allegation was placed under a sealed document, I believe,

19   so it is still part of the record.

20        THE DEFENDANT:  I was unaware of that.  This is

21   new to me.

22        THE COURT:  So again, it appears that what you

23   are trying to introduce is a matter and I now do recall

24   that there was a sealed record during the trial of a

25   discussion of that situation.  That document, by the way,

```
 1    if you wish to have that document, Mr. Willoughby, if you
 2    wish, and I would only suggest that you discuss this with
 3    your counsel.  I can lift any protective order with respect
 4    to that document or unseal it for you if you wish to have
 5    that document, but that's something you can raise later
 6    after you've had a full opportunity to talk to your lawyer
 7    about that.  And I don't know what you and your lawyer
 8    obviously discussed about it or what was shared with you at
 9    that time.
10            THE DEFENDANT:  I would like that, Your Honor.
11            MR. MARONEY:  Your Honor, we would appreciate
12    being heard on that because there were reasons for the
13    sealing, and of course the whole matter was stricken on our
14    Rule 412 motion.  We would oppose the defendant having that
15    document.
16            THE COURT:  We'll save that for a later date.  We
17    can have a discussion about that later.  I assume on appeal
18    that may be a matter that may come up, and that would be an
19    appropriate time to discuss that.  Again, I don't see that
20    as being pertinent to today's hearing in the sentencing.
21            THE DEFENDANT:  Okay.  I didn't know.  I thought
22    that would go into, well, before I give this guy 3,000
23    years let me take into consideration that things aren't
24    exactly the way they seem because of certain issues, and
25    that was my position on that.
```

```
 1              THE COURT:  Anything else you wish to raise?

 2              THE DEFENDANT:  I just want clarity on in the PSR

 3    the statements that I read from the order that you provided

 4    say "immaterial."  Does that mean you're explicitly saying

 5    you're not relying on those for sentencing?

 6              THE COURT:  I'm saying that some of the

 7    differences that you raise really don't amount to much.

 8    They aren't significant.  They are not determinative of the

 9    outcome of my sentence.  Whether someone stayed at

10    someone's house two days or three days or the like, I

11    understand that there can be differences in recollections

12    over time of matters, I certainly understand that.  I am

13    focused on those matters which are important for the

14    difficult task of determining what is an appropriate

15    sentence in this case.  And certainly I have come to learn

16    that minor differences by people recollections may differ

17    over time of certain matters.  But there are certain

18    matters that are undisputed, and there are certain matters

19    that come to me already completed, for example, the trial

20    and the verdict.  That is what it is, and I have that

21    before me.  And as I indicated earlier, I sat through the

22    trial and listened to the testimony along with the jury.

23    So I understand those things.  So when I say "immaterial,"

24    I mean that the matters that you've pointed out really

25    don't make a difference on what is an appropriate sentence
```

1    in this case.

2              THE DEFENDANT:  So is there any way that they can

3    be taken out of the PSR if they're immaterial?

4              THE COURT:  Well, you believe they're immaterial.

5              THE DEFENDANT:  You stated they were.

6              THE COURT:  I'm saying that the differences that

7    you are highlighting for me in your written filings are

8    immaterial.  What I'm going to have happen in this case is,

9    and I'm going to get there I hope in a few minutes, is the

10   presentence report will be made part of the record in this

11   case, including the revisions and including your objections

12   and including my ruling on your objections.  So those

13   documents that I filed will be made part of the package for

14   the presentence report in this case.  So your voice will

15   continue to be heard on appeal.

16             THE DEFENDANT:  And that will be what goes to the

17   BOP?

18             THE COURT:  I hope so, yes, along with the other

19   appropriate papers in the package.

20             THE DEFENDANT:  Okay.

21             THE COURT:  Anything further you want to address

22   at this juncture?

23             THE DEFENDANT:  I -- I mean, with the statements

24   that Mr. Cocoves made to me as far as, you know, I'm not

25   getting a fair shot, this is the government's arena and

1    they pay the refs, it just, it -- it just doesn't seem as

2    though I'm going to get a thorough argument out of him and

3    full attention as an advocate for me with him making a

4    statement like that.  I mean, it -- the plain English

5    definition of that is there's been some pay off going on or

6    something here.

7                    MR. COCOVES:  Can I address this, Judge?

8                    THE COURT:  Sure.

9                    MR. COCOVES:  This part about wider discussion,

10   and essentially, and I'm stepping aside from

11   Mr. Willoughby's case but just in general, I think that

12   there's been a hysteria surrounding these cases.  I'm not

13   suggesting that they are not legitimate offenses and that

14   the laws are unjust, but some of the sentences associated

15   with these kind of cases as well as pornography cases are

16   overreactive and unduly punitive, and this is across the

17   board.  I'm not suggesting that anybody's been paid off,

18   but I do feel they are unduly punitive, and society has

19   been asking for these sentences and they're getting them.

20                And I think in many instances, and I think

21   Mr. Willoughby is an example, 30 years for this kind of

22   conduct in this case dwarfs a sentence that if I had shot

23   somebody in the street here I would be getting a much

24   lesser sentence, and I think that is a more heinous crime,

25   killing someone.

```
 1              I'm not trying to minimize the trauma that the

 2     government in the presentence report suggests the victim

 3     suffered in this case but she's still alive.  And for

 4     someone to receive a 15 year sentence for shooting someone

 5     in the street whereas somebody like Mr. Willoughby is

 6     looking at 30 years to life for conduct that falls short of

 7     that kind of result, I find it be unfair, and I've made

 8     that known throughout pleadings and in briefs to the

 9     various courts.  And they have been -- not been followed.

10              And nobody's -- there's been some general

11     comments, and I think that Judge Merit (phonetic) in

12     particular of the Sixth Circuit has found some sympathy

13     with those arguments, but not the entire Sixth Circuit and

14     certainly not the panels I've appeared in front of.  So

15     I -- when I make comments to Mr. Willoughby, I think this

16     is the message I was trying to convey, and I didn't -- I

17     stand behind that message.  And I guess I'm jumping into

18     allocation and I'll step back for a moment.

19              THE COURT:  I think both of you have jumped ahead

20     and so I've got a review of upcoming attractions, and

21     that's fine.  I need to cake care of first things first.

22     But let me assure both of you at this juncture that my

23     sentence in this case is not in any way, shape or form

24     going to be affected by what you may call hysteria, what

25     you may call publicity, what you may call punitive
```

1  sentences.  I have my guidelines to follow, and I'm going

2  to talk about those at the appropriate time in this hearing

3  and what those guidelines are and how I see them applying

4  to this case.  That will be my guiding light.  And I can

5  assure both of you and anyone else in the courtroom that

6  that's what will drive the sentence in this case and not

7  anything else, not any speculation and certainly not any

8  factors that are inappropriate for me to consider.

9           MR. COCOVES:  And if I may, I understand The

10  Court has -- has to do what The Court has to do based on

11  the laws of the court -- The Court works with, these are

12  just my comments in general, and again, as part of a wider

13  discussion.

14           THE COURT:  I understand.  And I understand that

15  wider discussion, but that wider discussion is not before

16  me today, and it's not something I'm going to take into

17  account for your sentence, Mr. Willoughby.

18           THE DEFENDANT:  Well, Your Honor, Mr. Cocoves

19  just concreted what I -- what's been going on between he

20  and I.  I mean, I just -- I don't have any confidence with

21  him conducting my sentencing at all.  I mean, you know, I

22  don't know -- I don't know how much more I can be clear

23  that once someone tells you something like that, how can I

24  continue with him as counsel?

25           THE COURT:  Well, he just explained the context

1   of his comment to you, so it is me who does not understand

2   how you could make the statement you just made.  Let me

3   indicate to you, from my observation post I see that your

4   counsel has submitted your arguments to me for review; he

5   has submitted the arguments that he believes ought to be

6   made on your behalf.  So I have before me both his insights

7   into your case as well as your own insights into your case.

8   I've addressed and certainly tried to address all of those

9   arguments.  I know that you've had conversations, I know

10  that you have talked, and the fact that you are talking is

11  a good thing.  You've been talking here in this courtroom

12  together.  You've been sharing papers together.  I

13  certainly don't see a situation here that calls for, if

14  that's what you're hinting at, a substitution of counsel.

15  It's my observation over these number of weeks that your

16  counsel has made every effort to put before The Court those

17  arguments which he believes are appropriate as well as

18  those arguments that you wish him to make on your behalf.

19  And I think the record will speak for itself in that

20  regard.

21          Let me indicate that at this point, having had

22  confirmation from counsel for all sides as well as the

23  defendant, Mr. Willoughby, that that presentence report and

24  revisions have been reviewed with opportunities for comment

25  and objection, that the presentence report will be made

1   part of the record in this case under seal and available as

2   necessary, and we will also supply with that presentence

3   report the objections filed by the defendant, along with

4   this court's rulings on those objections, and that package

5   will be provided both to the BOP as well as available for

6   appeal purposes.  I have confirmed the sentencing guideline

7   in this case.  I have confirmed the mandatory minimum, and

8   unless counsel for either side have additional testimony

9   for The Court or additional paperwork for The Court, I have

10  not received any letters on behalf of the defendant.  I

11  should note that.  I'm happy at this point to turn the

12  floor over to defense counsel to argue for an appropriate

13  sentence on his client's behalf.

14          But before you do, I do have an open remark.  I

15  want to address this because it also was something you

16  brought up yet again today, Mr. Willoughby.  The last time

17  we met you expressed some dissatisfaction with your

18  classification as a career offender.  I want you to know

19  that The Court has carefully reconsidered that

20  classification, and I stand by my earlier ruling that such

21  a classification is appropriate in this case.  And it is

22  also set forth in the order I filed today in greater

23  detail.  But for now let me say the requirements are set

24  forth in section 4D1.1, which allows for classification as

25  a career offender if, one, you were at least 18 years old

at the time you committed the crime in this case; two, the
crime is a crime of violence; and three, you had at least
two prior felony convictions of controlled substance.  That
is drugs.  There is no dispute you meet the first and third
of these requirements.  While the determination of whether
the instant crime is whether one of violence is a bit
trickier.  It is not as simple as whether you used force or
violence, which by the way, the evidence shows that you
did.  Sex trafficking of children is not one of the
enumerated crimes in guideline Section 4B1.2(a).  Yet this
court is convinced that convictions under the sex
trafficking statute necessarily involve conduct that
presents a serious potential risk of physical injury to
others, namely child victims.  As such, this court finds
that you are appropriate for consideration under the career
offender statute.

        As I've indicated in the order filed today, this
classification, however, is not a controlling factor in
your sentence.  Section 3553(a) and the factors under that
statute are the appropriate focus.  And in that regard, and
before counsel for either side speak, I want to now take
the opportunity to review the key trial testimony.

        I want to note at the outset that we do have the
transcript of Shenae's testimony, does not begin to reflect
how powerful her testimony was.  She was an outstanding

1   witness who did not flinch from questions and who

2   maintained her composure despite the difficult questions

3   and despite the proximity with which you were seated to her

4   as you are today to that witness stand and your constant

5   glare during the entirety of her testimony.  She gave

6   straight forward and honest answers to all questions.

7   There's no doubt in my mind, as well as the jurors', that

8   she was telling the truth.  And what did she say?  She said

9   she was forced to have sex with you.  She talked about the

10  anal beads that you forced her to use; that you required

11  her to have sex with others and you indicated she would,

12  quote, learn the game, end quote; that you were her, quote,

13  daddy, end quote; you gave her a list of names from a

14  journal which had Barbie stickers on the cover, and those

15  names of customers with phone numbers were located in a

16  wooden box; you told her what to say to these customers.

17  You gave her names such as Jessica and Jasmine; you gave

18  her your cell phone to call these customers; you were

19  present when she made these calls; you gave her written

20  instructions and directions; you told her what to charge

21  these customers; you provided her clothing to wear, make up

22  and condoms; you advised her not to kiss on the mouth with

23  these customers, that kissing on the mouth was reserved for

24  you; you drove her to appointments, you took the money she

25  collected.  Some prostitution took place at your own home

1   where your own daughter also resided; you attempted to

2   attend and use her at a swingers convention; you told her

3   to walk Lagrange Street, also discussed taking her to

4   Detroit for a week or to Florida to a cat house; you beat

5   her, you hit her for not obeying your rules and for trying

6   to get away.  This, in short, was a scared juvenile who had

7   no place to go when she walked into your life, and you made

8   sure she had no place to go during the tortured month that

9   she lived with you.

10          Coupled with the testimony of Ed and Chip to whom

11  you sent her to have sex and Jill and Renee for whom you

12  also pimped.  We have a picture of your world of sex

13  trafficking of minors.  Today we have confirmed the

14  guidelines and the statutory minimum.

15          I now ask counsel to assist me by identifying

16  what reasons they believe support a variance downward from

17  the guideline range as has been suggested by defense

18  counsel or support a sentence greater than the mandatory

19  minimum as suggested by the government.  I have, again, for

20  the record, reviewed the supplemental sentencing memos

21  filed by both sides.  And thank you for those.  If you have

22  further arguments or wish to comment on the opposing brief,

23  I am happy to listen.  The floor is yours, Spiros.

24          MR. COCOVES:  Thank you, Judge.  My earlier

25  comments I'd ask The Court to consider, proportionate not

1    only to the similarly situated defendants but also to other

2    crimes and punishment for those other crimes.

3           Again, The Court noted that we filed objections

4    to the presentence report as well as the sentencing

5    memorandum and the supplement that contains a great deal of

6    our information and that we'd like The Court to consider.

7           Just a couple of extra thoughts on my part,

8    first, the presentence report at paragraph 125, the revised

9    version notes that a variance might be appropriate here so

10   there's more than just us, I guess, for lack of a better

11   phrase, making that argument.  I also think that at least

12   as of the most recent revised report we had not had an

13   impact statement from the alleged -- from the victim in

14   this case.  I don't know, has that changed?

15          PROBATION:  No, Your Honor.

16          THE COURT:  Myrna indicates that we have no

17   statement from the victim.

18          MR. COCOVES:  Which I would suggest The Court

19   should consider as a factor.  I would ask The Court to vary

20   based on the reasons that we offered, and I would also ask

21   for a couple of reasons the -- to the extent The Court

22   relies on the career offender I think in the sentencing

23   memo and the objections, I think it adequately shows that

24   this was basically a dart board -- dart board picked by the

25   commission.  There's no statistical backing for that.  To

1    the extent The Court relies on it I ask The Court to

2    consider that analysis we offered.  We did suggest there

3    were three other sentences, I understand.  At least I

4    understand based on my own experience that there are

5    probably other factors at play that The Court -- that those

6    sentences were arrived at, but the fact of the matter is

7    average of 105 months for similar violations.  And I would

8    ask that The Court consider the factors that we outlined in

9    the sentencing memorandum.

10          Finally, as regard to whether or not 18 U.S.C.

11   1591 a crime of violence, The Court acknowledges it is a

12   close question.  Intuitively I can see how you might want

13   to come to that conclusion based on other statutes;

14   however, I think intuitively we would think a felon

15   carrying a firearm would be a crime of violence given the

16   potential for harm, yet that is not a crime of violence.

17   So I believe that question is wide open.  And to the extent

18   The Court may want to wish to reflect a variance in that

19   ambiguity in that statute.

20          Again, I would ask The Court to rely on what

21   we've already submitted, and I believe Mr. Willoughby does

22   have some comments for The Court.

23          THE COURT:  Mr. Willoughby, the floor is yours.

24          THE DEFENDANT:  People of The Court, Your Honor,

25   supporters, thank you.  I've been publicly beaten for

1    three-and-a-half years with the equivalence of the late

2    Rodney King.  I finally get to speak.  I definitely wanted

3    to testify in my own defense, however, trial counsel argued

4    against it and for his reasons he -- I didn't.  I realize

5    that was the worst advice that I could have ever been given

6    was to not defend myself.  All I have on my record is two

7    drug convictions, so I couldn't understand when he

8    repeatedly told me that they're -- that prosecution is

9    going to kill me with my criminal record of two felony

10   convictions.  In hindsight I guess now I see why he chose

11   for me not to testify.  This was a Jim Crow investigation,

12   prosecution and trial.  This was the kind of trial that was

13   held before there was civil rights, a black man accused of

14   a heinous crime against a white girl who lied about her age

15   and identity, had jungle fever and was scared to get locked

16   up until she was 21 for running away again after she had

17   been given chance after chance.  This was her last shot.

18          Instead of taking responsibility for her own

19   actions the blame was shifted, with the encouragement of

20   the Federal Task Force of Northwest Ohio Violent Crimes

21   Against Children.  I had an all white jury from rural Ohio,

22   not one urban white person, not one black person.  There

23   was heavy emphasis on my family relation who had nothing to

24   do with me and nothing to do with this case at all.

25          The jury was never explained to what it meant

1    when Shenae testified to not saying anything about this

2    until the FBI interviewed her, not knowing the FBI was

3    coming and just popping up and asking her if they can talk

4    to her, being interviewed six different times and the first

5    time being with the victim witness specialist present;

6    staying on the run until she was 18 years old, scared to

7    get in trouble for running away again.  These were all

8    things that Ms. Wise testified to.  The jury -- it wasn't

9    explained to the jury what this all meant, though.

10             Ladies and gentlemen, this meant coercion.

11   Ms. Wise testified that they interviewed S.W., Shenae, for

12   hours in private.  And I say Ms. Wise, I mean Ms. Mary

13   Wise, Shenae's foster mom testified that they interviewed

14   Shenae for hours in private without her guardian present,

15   never given explicit permission to interview Shenae.

16   Shenae trying to kill herself many times before she even

17   ran away on January 19th before she even came in contact

18   with me.  These are things that Ms. Wise testified to, the

19   jury was never explained what it meant that Shenae

20   allegedly picked out a photo of Ed at the second chance

21   non-profit organization.  The jury was never explained to

22   what the paper clip mark that suggested suggestion on the

23   photo of Ed in the sixth person line up signaled.  The jury

24   was never explained that Shenae had recanted this story in

25   June, 2009 and said she had already told the story once and

1     figured she'd tell it again.  Why change it?  Because she

2     didn't want to get in any more trouble.  The jury was never

3     explained to that Shenae had a history of recanting after

4     making sexual allegations against a dope man specifically

5     in a 2008 allegation where the gentleman passed the

6     polygraph and Shenae later recanted.

7              Your Honor, I shouldn't be sentenced because this

8     was not justice guaranteed by the U.S. Constitution.  This

9     was gorilla justice by barbarians, and I didn't have any

10    legitimate counsel for trial.  He didn't produce any of my

11    witnesses, didn't challenge any of the government's

12    evidence, didn't effectively cross examine the government's

13    witness, didn't present any evidence in my possession that

14    showed the witnesses were lying, allowed the admission of

15    forbidden character evidence, allowed hearsay vouching and

16    bolstering, allowed improper jury instructions, allowed an

17    amended indictment at the conclusion of trial, did no

18    investigation into my accounts of what happened, didn't

19    gather exculpatory Brinks/Brady material, didn't

20    investigate any of the government's witnesses background,

21    especially the alleged victim for possible motive to

22    fabricate a story, argued against me testifying.  The key

23    witness had severe credibility issues, but the government

24    made sure to keep all of those issues out.  My attorney, my

25    trial attorney told me in his own words that he could not

1    effectively cross examine Shenae because the jury would

2    hate him.  Those were his words.  During a side bar he says

3    he's been known to screw up.  Those were his words.  He

4    even admitted during that same side bar to instructing the

5    government on how to get suppressed evidence into trial.

6    He allowed 100 percent leading questions on the direct

7    examination.  Shenae Wells didn't testify to anything.  She

8    said yes, no to everything that the interviewer said to

9    her.  He led her with everything.

10          Your Honor, there was a trial in this courtroom

11   where I was prohibited and restrained by my own counsel to

12   put up a defense.  Your Honor, I shouldn't be sentenced

13   because there was a team of rogue prosecutors and rogue

14   federal task force that built a case of alleged force,

15   threats of force, fraud and coercion against me utilizing

16   those very same methods to obtain false accusations from

17   those witnesses against me.

18          Your Honor, I shouldn't be sentenced because the

19   federal task force that initiated this charge admitted

20   during trial to performing in concert and their

21   significance in getting the job done with the passing of

22   Senate Bill 235 and being in cahoots with the Last Chance

23   Non-profit Organization where the alleged victim was being

24   interviewed at.  My indictment came down after 18 months at

25   the exact same time as the resurgence of Senate Bill 235.

1   That's an obscene level of bias and prejudice and it's not

2   a coincidence.

3          Your Honor, I shouldn't be sentenced because of

4   the government's obscene level of reliance on my family

5   relation to obtain an indictment during a September 28th

6   grand jury proceeding, during trial when my brother had

7   absolutely nothing to do with this situation.  Your Honor,

8   I shouldn't be sentenced because the government withheld

9   key and crucial evidence that went to the heart of this

10  case, withheld key evidence from me, was aware that their

11  witnesses were lying and did nothing to correct their

12  purgered testimony.

13         The prosecution, especially Mr. Moroney, tampered

14  with evidence before there was probable cause for an arrest

15  warrant during a September 28th, 2010 grand jury hearing

16  with Mr. Hardy.  Mr. Hardy was asked by a member of the

17  jury -- grand jury why did it take so long for this

18  indictment.  And instead of Mr. Hardy being given the

19  opportunity to answer, Mr. Moroney interfered and said I'll

20  take care of that.  This was before there was any probable

21  cause to even arrest me.  The U.S. attorney, Mr. Moroney

22  lied to federal magistrates, lied to you, Your Honor.  The

23  prosecutors even helped cover up the Federal Task Force

24  illegal and coercive tactics and maneuvering.  Even during

25  trial with the witness Stephanie Hummer when she admitted

1    to my attorney that the Federal Task Force agents had

2    forced her to testify to the grand jury on June 3rd, 2009.

3    This happens to be one of the lies that Mr. Moroney has

4    unfortunately told in this case.  Mr. Moroney has said on

5    numerous occasions, and specifically in a Franks hearing

6    motion that a government investigation was not authorized

7    until November 3rd, 2009.  However, there is a grand jury

8    proceeding with Ms. Stephanie Hummer on June 3rd, 2009 and

9    a federal grand jury proceeding with Shenae Wells and an

10   interview at the U.S. Attorney's Office, with Mr. Hardy on

11   July 1st, 2009.  So it was clear federal involvement before

12   November 3rd, 2009.  For some reason Mr. Moroney has chose

13   to say that there's been no federal investigation until

14   November 3rd.

15          Your Honor, I shouldn't be sentenced because the

16   key component in this case, Federal Agent James Hardy, sat

17   at the prosecution's table during the entire trial given

18   Olympic sized weight to his testimony and credibility to

19   the jury when he testified as a fact finder, an expert

20   witness and evidence gatherer in a case that he

21   investigated that hinged specifically on credibility.  He

22   sat right at that table the whole time.  There was no way

23   the jury was not going to believe anything he had to say

24   being part of the team at the table.

25          Your Honor, I shouldn't be sentenced because my

1   Constitutional rights has been seriously violated when,

2   among other issues, I did not receive my fundamentally fair

3   trial or effective assistance of counsel.  Ms. Stephanie

4   Hummer did not testify in this case because she said she

5   was going to refuse.  The government was going to impeach

6   her with her grand jury testimony.  She requested to speak

7   to my then trial counsel and told him the Federal Task

8   Force forced her to testify against me at the grand jury on

9   June 3rd, 2009 and was attempting to force her to testify

10  during trial.  Ms. Stephanie Hummer never testified at

11  trial.  She was excused.  I argued with my trial counsel

12  that was a perfect example for us because my theory was

13  Shenae was coerced to tell this ridiculous story.  He said

14  that Your Honor would not allow Ms. Stephanie Hummer to

15  testify to that.

16          I shouldn't be sentenced because I'm actually

17  innocent, not guilty.  Your Honor, I'm facing prison when I

18  was deprived of the effective ability to develop in

19  evidence the plan or scheme purportedly motivating my

20  accuser, whose state of mind was an essential element of my

21  defense of her fabricating.  And I have a Sixth Amendment

22  right to fully and effectively confront that complainant.

23  With all due respect, Your Honor, I should not be

24  sentenced.  That's all I have to say.

25          THE COURT:  Thank you.  Let's now hear from the

1    government.

2             MR. MARONEY:  Your Honor, we've --

3             THE COURT:  And in your remarks, I'd like to hear

4    you comment on the following arguments made by defense

5    counsel, and that is that there was no victim statement in

6    this case and what that may mean for sentencing purposes,

7    that's number one.

8             Number two, that compared to other crimes, the

9    guidelines are -- this is my phrase, out of whack, I think

10   is what counsel was trying to sense.

11            MR. COCOVES:  Draconian.

12            THE COURT:  Draconian.  Thank you.  Number three,

13   if you want to comment on whether a violation of statute in

14   this case does indeed constitute a crime of violence.

15            Number four, similarly situated defendants.  In

16   defendant's sentencing memo he highlighted a few cases to

17   suggest that the guideline range is Draconian in comparison

18   to these other similarly situated defendants.  And I

19   should, for the record, note and will make it part of the

20   record in this case, that at my request pretrial services

21   prepared a similar comparison of these and other cases to

22   assist The Court.  And I think those are the main points

23   that were raised in argument by defense counsel.

24            I suppose an overall question is, which really

25   encompasses all the points that Spiros made, is how does

1    one arrive at the guideline range in this case?  What is it

2    that drives a sentence in the guideline range for this

3    particular case?  He mentioned the way in which the

4    guidelines were conceived for crimes like this.  So if you

5    could incorporate in whatever other remarks you have some

6    responses with that, they would be appreciated.

7              MR. MARONEY:  Thank you, Your Honor.  First of

8    all, I would note that we filed two sentencing memoranda,

9    and our position remains very strongly that this case calls

10   for a guideline sentence.  And that guideline range -- that

11   guideline range is, as The Court is aware and has found, is

12   360 months to life.  As you summarized the testimony of

13   Shenae Wells, we -- that capsulizes the horror to which

14   this 16 year old at the time was subjected.

15             We stand by the verdict.  This verdict speaks

16   very loudly.  Needless to say literally everything that The

17   Court just heard from this defendant is not true,

18   incorrect, fabrications, stretching, right down the line,

19   and there's no need to go through that.  The victim did

20   provide a statement.  She testified.  She has not provided

21   a statement to probation.  That's her choice.  She's had

22   several difficult circumstances since the trial, delivering

23   the baby and her mother passed away.  And needless to say

24   because we dealt with her, this has been a tremendously

25   traumatic experience.  And the fact that, you know, we

1    really can't sit here and speculate as to why she wouldn't

2    want to provide a statement, but her testimony at trial was

3    all the statement she needed to give.  And we do not feel

4    in any fashion that that's an appropriate consideration for

5    some factor into sentence, Your Honor.

6            As far as the guidelines go, they reflect

7    Congress' view and the Sentencing Commission's view as to

8    how horrific these crimes are.  There's often discussion

9    about the severe sentences for child exploitation and child

10   porn wherein many cases there isn't a live victim.  There's

11   a live victim.  There's reasons why Congress has reflected

12   and the Sentencing Commission, under the guidance of

13   Congress, why they have -- have reflected this kind of a

14   treatment.  I mean, 15 year mandatory minimum where force

15   fraud and coercion is used or the victim is under 14 up to

16   a life sentence is a direct reflection of Congress' view

17   that this is modern day slavery.  Trafficking is a horrific

18   crime.  There are many other provisions in the criminal

19   code that reflect Congress' view as to how serious this is.

20   Another one is the presumption in favor of pretrial

21   detention for 1591 offenses.  The provisions for social

22   services and restitution, victim care, all of those

23   provisions are meant to reflect that Congress views this as

24   an extremely serious horrific crime.  And they have raised,

25   when you look at the provisions in the law, 1591(C) is

1    another example where Congress has gone from requiring

2    actual knowledge on the part of the defendant to the age of

3    the victim to reckless disregard.  And today, since 2008,

4    it is mere reasonable opportunity to observe.  Again, a

5    reflection of how serious they take this.  You deal with

6    your victim at your peril.  And in this case it's only a

7    guideline sentence within the correctly determined range

8    that would appropriately address the conduct of this

9    defendant.

10           We have written and asked The Court to find that

11   Section 1591 is a crime of violence.  It is not conceivable

12   to us how committing a crime of juvenile sex trafficking

13   affected through means of force, fraud or coercion would

14   not be a crime of violence.  And even before the cases that

15   court has noted in its latest filing, many of the offenses

16   that have been determined to be crimes of violence such as

17   escape, indicate the broad view that the guidelines in

18   4(b)1.2, apply to determining a crime of violence.

19   Certainly the 2423(a) cases, the juvenile man act cases

20   which don't involve force, fraud or coercion, and it's the

21   mere transportation of a juvenile across state lines to

22   engage in prostitution, those have been -- that offense is

23   a crime of violence.  So it would be very difficult to

24   fathom how those would be crimes of violence under the

25   career offender provision, but a juvenile sex trafficking

1    through force, fraud and coercion would not be.

2           Defense counsel has pointed out some alleged

3    comparable case, 1591 cases in the district.  We've

4    addressed those somewhat, Your Honor.  I would note that

5    all of these crimes are -- are, as we've put, horrific.  In

6    two of the cases cited by defense counsel, the Fetter case

7    with the recent sentence by Judge Katz and the Davis case

8    which was a sentence by Judge Dowd in Akron, you know, I

9    would note that not only were three levels accorded for

10   acceptance of responsibility, but there were downward

11   departures for substantial assistance in those cases.

12   Those defendants acknowledge their wrong doing, they

13   expressed remorse.  They provided helpful information to

14   law enforcement which reflected a lower sentence.  The

15   Touchstone case, again, as I said, these are all horrible

16   cases.  Touchstone got ahold of a 16 year old and drove her

17   to a Starbucks in down town Cleveland and sold her for $300

18   to what he thought was a madam.  In fact, the madam was

19   cooperating with the FBI.  The 16 year old was never in any

20   danger.  She was immediately recovered by the agents as she

21   left the Starbucks with -- with the purported madam.  But

22   there was no sex between Touchstone and the victim in that

23   case, no relationship whatsoever.  And there was no force,

24   fraud or coercion in that case.  And even in the face of

25   those facts The Court sentenced at 15 months above the 120

1    month mandatory minimum.  Again, at the high end of the

2    guideline range.

3            We've cited additional cases in our memorandum,

4    Your Honor, from other districts where there have been

5    significant sentences of the statutory maximum, 600 months.

6    The one case, I believe Sanchez, with a 240 month sentence

7    cited cases from that district and/or that circuit and

8    other circuits with 25, 30, 35 year sentences for these

9    cases.  So in our view, the keys here are to deter future

10   criminal conduct and to protect the public, and especially

11   juveniles.  And those purposes are accomplished only with a

12   significant and severe sentence.  Thank you, Your Honor.

13           THE COURT:  I'll give you the last word Spiros or

14   Mr. Willoughby.

15           THE DEFENDANT:  Yeah, I'd like to finish

16   something, Your Honor.  The Court, supporters, during this

17   ordeal, I lost my home, I didn't get to see my son

18   graduate -- go ahead.

19           MR. COCOVES:  Just a couple comments, Judge.  The

20   statute provides for a minimum mandatory of 15.  I suggest

21   that's Congress' idea what a sentence should be in these

22   circumstances.  I also think that Mr. Moroney spoke about

23   the three -- three sentences that we had included in our

24   sentencing memoranda and that there were factors affecting

25   those sentences.  There are factors affecting this sentence

1    as well and we've explained those out that would support a

2    downward variance so while there were factors in those, and

3    there are factors here as well.  So we would ask The Court

4    to consider that -- a sentence at that 15 year would be

5    more than adequate to meet all the goals of 3553(a).

6            THE COURT:  Thank you.  My sentence in this case

7    is guided by the 2005 U.S. Supreme Court decision in

8    Booker, and later cases by that court.  I'm also guided by

9    our own appellate court in decisions which it has handed

10   down.  And all of these cases require me to consider the

11   applicable guideline range which we have discussed and

12   confirmed.  That range is 360 to life with a mandatory

13   minimum of 15 years.  This is an advisory benchmark that is

14   the guideline range is -- the mandatory minimum is a

15   dictate from congress that really sets the threshold for

16   the sentence in this case, Mr. Willoughby.

17           I'm also required to make an individualized

18   assessment of you based on the facts presented in this case

19   to arrive at an appropriate sentence, and that's a process

20   that necessarily involves an exercise in judgment, not just

21   adding up numbers.  And oftentimes it involves competing

22   considerations.  I look to Section 3553(a), the statute

23   that requires that my sentence be sufficient but not

24   greater than necessary, consider your case, balance the

25   factors under that statute to arrive at a just punishment.

1    So I will do now what I always do and that is I will

2    address each of those factors and how I see them applying

3    to you and your case.

4              First, the nature of the crime.  I won't go into

5    great detail other than to note from the presentence

6    report, and first let me note as a preliminary matter,

7    which I usually do, that you are 38 years old.  You do have

8    your high school equivalency, your GED.  You have four

9    children, and you -- a few moments ago tried to mention one

10   of them.  We will talk about that a little bit later.  But

11   first the nature of the crime, the single count indictment

12   filed in September of 2010 charging you with knowingly

13   recruiting and enticing and harboring and transporting any

14   minor and with the use of force, fraud and coercion to

15   engage in a commercial sex act.  That was in violation of

16   18 U.S.C. section 1591.

17             In December of 2011 you were found guilty by a

18   jury on that single count of the indictment and also by

19   answers to questions that we gave to the jury.  They found

20   that you did use means of force, threats of force, fraud,

21   coercion or in combination to cause what we refer to as

22   S.W. at the time, we now call Shenae, to engage in a

23   commercial sex act.  That's set forth in the presentence

24   report in paragraphs one and two.  The conduct is further

25   summarized in paragraphs 5 through 24.  And I won't repeat

1    what's there other than to summarize a bit.

2              In January 2009 Shenae, who was a runaway and was

3    living with a foster family in Holland, Ohio left home, ran

4    away after having some problems adjusting to her foster

5    parents residence.  And in March of 2009 is when she was

6    interviewed by the FBI case agent, and at that time she

7    identified you from a photo array as the person with whom

8    she had been for a period of time.  And she provided the

9    following information, she drifted for a while between the

10   time she left home in January until she ended up with you,

11   which was sometime around mid February of 2009.  That's

12   when she was introduced to you and moved in with you at

13   your Durango Drive residence.  You made her feel as though

14   she was your girlfriend.  She performed household chores

15   and watched your eight year old daughter.  She had

16   intercourse with you almost daily, including anal

17   intercourse and which she stated she did not want to do it

18   but relented out of fear.  You provided her with names and

19   phone numbers of customers that were written in the

20   journal.  You coached her and directed her on what to

21   charge and what to say.  You provided her clothing,

22   specifically under garments which she was to wear while

23   engaging in acts of prostitution with clients.  This is all

24   what I'm summarizing, all that came out during the course

25   of the trial.  Although she never went outside the Toledo

1    area to engage in acts of prostitution at your direction

2    you did have discussions about going to Detroit or to

3    Florida, and you did go to Northwood, Ohio that one time

4    for the swingers convention at a hotel there.  Although

5    nothing happened because you didn't want her giving it up

6    for free when they should be paying for it.  She was forced

7    to walk Lagrange Street on at least one occasion in an

8    effort to attract clients.  You drove her there and you

9    picked her up.  And she also recounted being beaten by you

10   on at least three occasions and was beaten upon the face,

11   stomach, legs and hands.  And at the time of her interview

12   with the FBI case agent retained some faint bruising on her

13   legs from a beating she said occurred several weeks prior.

14         How did she escape this hell?  Well, she

15   pretended she was sick to make you believe she needed

16   medical attention.  And you agreed to drop her off at her

17   foster parents home on the night of March 19th, 2009.

18   Prior to dropping her off, however, you threatened her and

19   family if she contacted the police for questioning, causing

20   her to continue to fear for her safety.  You referenced a

21   search warrant.  Yes, this was a search warrant executed a

22   week later at your Durango residence.  And a number of the

23   items that were recovered in that search were introduced

24   and used at trial to confirm the story that Shenae

25   testified to.

1             At the trial the government established your

2    history as a pimp from the testimony of others, and Shenae

3    testified that you were well aware of her age at the time,

4    that she was 16 years old and that when she came to live

5    with you, you provided her with food and clothing and

6    housing, as it turns out all of which were in exchange for

7    her becoming a prostitute.  DNA evidence at the trial

8    supported the testimony that Shenae gave and it's clear, it

9    was clear to the jury, it's clear to me that you exercised

10   a great deal of control over her and what she could or

11   couldn't do, where she could go and where she couldn't, and

12   that you caused her to believe that she was in fear for

13   herself because of your conduct toward her.  That is,

14   again, a brief summary of what we heard at trial in this

15   case.

16             So when I weigh the crime in this case, I don't

17   think anyone can argue that it was a serious crime.  I

18   realize that you protest your guilty verdict and that you

19   believe that you are innocent.  That is a matter for

20   another day and another court.  I can tell you that other

21   arguments you made today are consistent with arguments you

22   have made in the past, the writings that you have provided

23   to The Court.  When you attack the jury and when you attack

24   the witnesses, when you attack lawyers, both your own

25   lawyer and the lawyers for the government, when you attack

1    the justice system, when you attack Shenae, you attack

2    everyone, but you apparently don't look in the mirror,

3    because if you were to look in the mirror, you would not

4    see a very pretty picture.

5            You talk about gorilla justice.  I'm going to,

6    for the record, tell you that there was no gorilla justice

7    in this case, nor was there in this courtroom.  There was

8    patience and justice, all in good time, all in good time.

9    And what you got away with in this case and perhaps three

10   years before has come to an end of the road.

11           I will indicate for the record I believe you have

12   had effective assistance of counsel to the extent you

13   allowed it in all the counsel that have represented you in

14   this case.  And again, some of the arguments that you made

15   in your speech to me now, Mr. Willoughby, are not comments

16   for an appropriate sentence but perhaps comments for an

17   appeal because you clearly feel that you have not had a

18   fair trial, a conclusion with which I strongly disagree.

19           Let's talk about the next factor, and that is

20   your character an and background.  And here, again, we can

21   look to the presentence report.  And by the way, the

22   presentence report indicates in paragraphs 29 through 31

23   your version of events, some of which you've touched on

24   here today.  You have had a voice in that respect.  I will

25   tell you that I do not believe your version of events.

1    They are wholly unsupported by what I have seen and heard

2    in this case.  But I understand that that's how you feel.

3             Your character and background, we can start with

4    your criminal history, which is summarized in the report in

5    paragraphs 44 through 57.  And your counsel has commented

6    in his memorandum that, in essence, your criminal history

7    isn't the worst of the worst, and I concede that, it is

8    not.  However, there is sufficient cases that you've had

9    with the criminal justice system in the past.  The most

10   serious being the two prior drug offenses, and we've talked

11   about that and written about that in this case so I won't

12   repeat that here.  I will note that you have managed, even

13   with some of these serious offenses, to avoid long prison

14   time.  And one might argue that you have been given the

15   benefit of opportunity to change your ways, but it's clear

16   through the pattern of your criminal conduct and the

17   consistency of your criminal conduct, be it serious or not

18   so serious, that you have chosen a lifestyle of crime.  And

19   that is part of your character and background as confirmed

20   in the report.  One would also look to, if they chose, to

21   your other criminal conduct, which is summarized in

22   paragraph 61 through 71, and that might confirm the

23   statement I just made.  Let me also note that a number of

24   these other crimes include warrants, probation violations,

25   failure to appear or report, bench warrant, bench warrant,

1    bench warrant, again, capias issue, warrant issued.  Let me

2    comment just on the one.  And that is the 2005 Michigan

3    matter where you were convicted of delivery or manufacturer

4    of narcotic, cocaine.  That's where you went to a motel,

5    and you sold crack cocaine to a confidential informant with

6    your four year old daughter Gabrielle standing in the back

7    seat of the vehicle witnessing the transaction.  This is

8    the conduct of a concerned father?  I think not.

9             THE DEFENDANT:  That was before I changed my

10   ways, Your Honor.

11            THE COURT:  Again, this presentence report covers

12   a long period of time, and we'll go to personal and family

13   data in paragraph 75 through 81 where you advised that your

14   parents have been divorced for some years, mom employed at

15   the University of Toledo in the administrative offices,

16   your father retired from Toledo Picking and Steel

17   (phonetic), both were remarried to others.  You moved from

18   your parents home at the age of 18, moved in with a

19   girlfriend with whom you had at least one child, I think a

20   couple children.  You've had several children.  The report

21   does not indicate, and in fact in your own words, that you

22   have a close relationship with any of these children.

23            Physical condition is summarized in paragraphs 82

24   through 84, nothing particularly significant there, other

25   than you've lost some weight since being incarcerated which

1    may be a positive thing and which may have improved your

2    high blood pressure and diabetes.

3          Mental and emotional health is summarized in

4    paragraphs 85 through 89.  Nothing particular of

5    significance there.  Substance abuse, paragraphs 90 through

6    93, again, some initial experimentation perhaps with

7    marijuana or cocaine but nothing of significance there.

8    And as indicated earlier in paragraphs 94 and 95 got your

9    GED and did begin to attend University of Toledo.

10         Employment record is paragraphed 97 through 102,

11   and you've had some spotty employment as summarized in this

12   report.

13         So character and background, I must tell you,

14   Mr. Willoughby, I unfortunately have to deal with a number

15   of criminal sentencings.  It's not a pleasant experience.

16   It's probably the hardest part of my job, but I find very

17   little to grab ahold of in your report that says, ah ha,

18   here's something good about this guy.  I struggle to find

19   in this presentence report or in anything I've heard during

20   the course of this case, something positive in your

21   character and background.  I have defendants who come here

22   who are good people who do bad things.  I have some

23   defendants who are bad people who do bad things.  You fall

24   in that latter category.

25         Under the statute, there is a requirement that my

1    sentence reflect the seriousness of the crime, promote

2    respect for the law and provide for a just punishment,

3    deter you and others from crimes like this, protect the

4    public from crimes like this and provide you with any

5    needed training or treatment.  And I'm also required to

6    avoid unwarranted sentencing disparities.  And so let's

7    talk about what works on those categories.  This is a

8    serious crime.  I think a crime against a minor would be

9    especially serious, and perhaps that is what motivated

10   Congress in part and the sentencing commission to come up

11   with the guidelines that they did in this case.  If our

12   society can do nothing else well, I hope we can protect the

13   minors from whatever the crime against them might be.  Who

14   should protect the children but society, the parents the

15   courts.  Respect for the law is very important in a case

16   like this involving a minor.  Deterring crimes like this is

17   important in a case like this involving minors.  And

18   protecting the public is important in a case like this.

19           I have reviewed the cases that Spiros provided

20   and that the government provided with respect to other

21   defendants and other cases.  Let me say that it is

22   difficult to find a common thread among these cases because

23   sentences will vary depending upon whether there was a

24   plea, whether there was cooperation, whether there was

25   acceptance of responsibility, any remorse that might have

 1   been shown, the different guideline ranges that might have

 2   applied in the various cases, the different statutes that

 3   apply in these cases, the different mandatory minimums that

 4   apply in these different cases.  So when you look at the

 5   cases provided by both counsel as well as pretrial

 6   services, we see a range of sentences, some below the

 7   guideline range, some in the guideline range, some way

 8   above the guideline range.  It depends.  And in fact, in

 9   this case an individualized assessment, which is where I

10   started my discussion, is important, and it's important to

11   note the particulars of you, Mr. Willoughby in this case as

12   well as the particular facts of this case.  So I have taken

13   into account all the cases cited by everyone to this court

14   in arriving at a just sentence.

15           Spiros, you commented upon no victim statement,

16   Yes, there wasn't one, however, I think, I believe and in

17   my heart of hearts given what I observed in the courtroom,

18   I have already heard the victim statement in this case.  I

19   indicated earlier her testimony was not shaken in any way,

20   and frankly I believe she was quite courageous in both what

21   she said and how she said it in this courtroom.  And I

22   believe also that with respect to the guideline range, yes,

23   you and I and others in this courtroom could have quite a

24   discussion, I suppose, about different penalties that

25   congress gives us and the defendant guidelines for

1    different kinds of crime.  But in this case, the guidelines

2    given to me reflect, I believe in part, that we're dealing

3    with live victims here, unlike pornography cases where we

4    oftentimes have defendants who are merely huddled in a dark

5    room with a computer all by themselves and viewing pictures

6    with no acting out, so to speak.  Here we have a live

7    victim who suffered at the hands of this defendant over a

8    period of time.

9           And so I am presented with a presumptive

10   reasonable guideline range.  And my decision today is in

11   part can I find something in this record that would suggest

12   to me that a downward variance as you've requested is

13   appropriate.  You talked about a crime of violence, and I

14   believe I've addressed that in my papers that I filed, but

15   I would also note that in the summary I gave earlier.  And

16   if you don't find violence in this case given the

17   testimony, I don't know where you would find it.  And as I

18   indicated in my filings when The Sixth Circuit tells me

19   that pepper spray constitutes a crime of violence, how can

20   we not say what occurred here constituted a crime of

21   violence.

22          So in summary, we have a violent felony here, we

23   have a defendant, Mr. Willoughby, with two prior

24   convictions involving drugs, we have a situation where a

25   young runaway, vulnerable, ends up with you and suffers at

1   your hands for a period of time, cleaning your house,

2   watching your daughter and then you having sexual

3   intercourse with her almost daily and then turning her out

4   to turn tricks for you for money and keeping her captive,

5   if you will, for a month or so.  I note for the record that

6   as you began to talk about your son, certainly at the time

7   of the presentence report, you had no ongoing relationship

8   with your son who I believe is now 16 years old.  Your

9   youngest daughter Gabrielle, age 11, who lived with you at

10  the time of this, I am shuttered to think of what an

11  example you were setting for these children with your

12  lifestyle.

13          You tell me today repeatedly you should not be

14  sentenced.  I disagree.  You should be sentenced and you

15  will be sentenced as part of the process here.  And the

16  difficult part is determining what is an appropriate

17  sentence under the guidelines and under the statute.

18          Pursuant to the Sentencing Reform Act of 1984, it

19  is the judgment of this court that you be sentenced and

20  committed to the custody of the Bureau of Prisons for a

21  term of 360 months.  That is the lowest end of the

22  guideline range and I believe it is appropriate in this

23  case.  You will be also committed to supervised release

24  upon your release from prison, and that supervised release

25  will be for a term of five years.  I am going to waive a

```
 1   fine in this case finding you don't have the ability to pay

 2   a fine.  I'm going to order the special assessment of $100

 3   due and payable immediately.  There are certain standard

 4   conditions of your supervised release.  Have you reviewed

 5   that with your client, Spiros?

 6            MR. COCOVES:  Judge, we got that towards the

 7   end -- or I guess towards the beginning, and no, we did

 8   not.

 9            THE COURT:  Do you want to review it now, or do

10   you want me to recite it into the record?

11            MR. COCOVES:  Might be appropriate to recite it

12   into the record.

13            THE COURT:  Then I will.  That document will

14   indicate that part of those conditions of supervised

15   release include mandatory drug testing, also includes sex

16   offender registration and notification, also known as the

17   Adam Walsh Act, also include minor protection and

18   restriction program, the MPRP, also include a restriction

19   on firearms and dangerous weapons, also require conditions

20   for search and seizure and conditions for financial

21   disclosure, and also require you to cooperate in the

22   collection of DNA.  Those are all terms under your

23   supervised release.  And before you leave the courtroom

24   today I'm going to ask that you review that document with

25   your lawyer, and you'll have the opportunity then to have
```

```
 1   that document filed and made part of the record in this

 2   case.

 3             There's been an indication that you wish to be

 4   referred to Milan for the service of your sentence.  I will

 5   recommend Milan.  I can't order it.  That's a determination

 6   made by the Bureau of Prisons, and they'll have to make

 7   that final decision, but we will include in our paperwork

 8   that you wish to reside in Milan or a facility close to

 9   Toledo.

10             Counsel for either side know of any reason not

11   previously made why this sentence I have just outlined

12   should no be imposed?

13             MR. MARONEY:  We do not, Your Honor.

14             MR. COCOVES:  Just one moment, Judge.

15                  (Defendant and counsel having an off the

16                  record discussion.)

17             MR. COCOVES:  No, Judge, I think The Court has

18   before it multiple of objections which The Court has ruled

19   on.  I just have one point.  There was a sentencing --

20   there was a hearing held on December 6th of 2011.  The

21   transcript of that was placed under seal.  I'd like leave

22   just to provide a copy to Mr. Willoughby of that with the

23   hearing still -- with the transcript still under seal.

24             THE COURT:  Why don't we couple that with the

25   earlier request of Mr. Willoughby.  Are we talking about a
```

1   different transcript now or the same transcript?

2         MR. COCOVES:  The transcript of December 6th,

3   2011.  That was prior to the trial.  It involved the

4   request of Mr. Willoughby to have Mr. Hartman released as

5   trial counsel.

6         THE COURT:  So we have two requests that have

7   been made at the hearing today, one of a document under

8   seal that took place prior to trial and one is a document

9   under seal that took place during trial.  I'm going to ask

10   you to put those in writing to give the government an

11   opportunity to respond to each of those requests and then

12   I'll issue a ruling accordingly on those.

13         MR. COCOVES:  I will.

14         THE COURT:  Anything further, Spiros, from you?

15         MR. COCOVES:  No, sir.

16         THE COURT:  Have I addressed all of your

17   arguments, Spiros?

18         MR. COCOVES:  I believe so, yes.

19         THE COURT:  You wish to say something,

20   Mr. Willoughby?

21         THE DEFENDANT:  Yes, I do.  Besides the

22   December 6th hearing, I just want to place the reason that

23   I want the transcript for that on the record is because if

24   I choose to move for an IOC on direct examination, I need

25   that transcript to make that decision of the

```
1    December 6th hearing.  I also request the April 10th

2    counsel substitution hearing as well for the same purpose

3    because I may decide to do an IOC on direct appeal.

4         THE COURT:  And your lawyer just indicated I

5    think that he was referring to both of those, and as I

6    indicated a formal request from your lawyer on the record,

7    to allow government an opportunity to respond and I will

8    then rule accordingly.

9         THE DEFENDANT:  Okay.  I would also like to have

10   the Butler County Children's Services records unsealed and

11   provided to me for the same purpose, for appellate purpose,

12   to see if there was any Brady material, Jencks material or

13   anything that I was not made aware of being that I just

14   found out that that was --

15        THE COURT:  If those are a part of the record in

16   this case under seal your lawyer can make that part of the

17   motion.  If they're not within The Court's possession,

18   that's a different story.  There's another avenue for you,

19   I suppose.  But I'll leave it to counsel to have a

20   conversation.  And what I would ask is that defense counsel

21   file one motion indicating all that is requested allowing

22   the government to respond to each of those.  And then I

23   will have a hearing if necessary, but certainly will rule

24   on that as promptly as I can.

25        THE DEFENDANT:  Okay.  So that -- there was --
```

1    there was several more but you're saying should I put those

2    on the record?

3            THE COURT:  If you want to, but I think your

4    lawyer's going to need to put them in a formal filing so

5    the government has a chance to respond to it unless,

6    Spiros, you want to just allow this recitation today to be

7    your formal filing?

8            MR. COCOVES:  I think coming from Mr. Willoughby

9    that would be the best.

10           THE COURT:  Okay.  We'll continue, and I'll ask

11   the government to probably order at least a portion of this

12   transcript so they understand what they need to respond to.

13   Go ahead.  I have three items so far that you've

14   documented.

15           THE DEFENDANT:  Okay.  I'm also requesting the

16   FD-302s or any -- or any memorandum, interview or photos

17   that dealt with Ms. Renee Todd that I was never provided

18   with when she testified.  I was never provided with those

19   materials.  I'm requesting those materials.  I'm requesting

20   the same materials for Mary Wise, I was never provided.

21   I'm requesting the same material for Albert Tusin, which I

22   was never -- I was never given those FD-302s or any

23   memoranda or anything, what he was going to say.  I'm also

24   requesting these photos of these alleged bruises that I was

25   never given and any and all medical examinations from

1    January 19th through June 17th of 2009 to determine if

2    there was any Brady material or Jencks material, you know,

3    the furtherance of my rights of confrontation in dealing

4    with those -- the evaluations with Shenae Wells herself for

5    the continuous duty of discovery for my appeals.

6            THE COURT:  And I'll allow the government to

7    respond to those requests and I'll rule.  As you've noted,

8    those are matters that may be more appropriate for another

9    proceeding in another court as opposed to the reason why

10   we're gathered here today.  I need to indicate for the

11   record, Mr. Willoughby, that you may exercise any rights to

12   appeal that you have or believe you have within 14 days of

13   the entry of my judgment, and that entry will take place

14   later this week, I suspect.  Please consult with your

15   counsel who will remain your counsel until any notice of

16   appeal is filed.  And if you believe you have a right for

17   appeal and grounds for appeal to exist, please have your

18   counsel timely file notice right to appeal, otherwise you

19   will lose forever whatever rights you might have to

20   challenge either your conviction or sentence by either a

21   direct or indirect appeal.  And if you need assistance in

22   filing notice of appeal for some reason, the clerk of

23   courts can assist you.  You certainly have competent

24   counsel who can assist you in that regard.

25            With that, let me close with this, and that is

```
 1    Mr. Willoughby, as I indicated earlier, I disagree with a
 2    number of the comments that you made here today.  I don't
 3    believe you've been publicly beaten.  Again, you seem to
 4    want to turn the tables.  It was Shenae who was beaten both
 5    physically and emotionally.  And you compare yourself to
 6    Rodney King, really?  Really?
 7              THE DEFENDANT:  In the courtroom.
 8              THE COURT:  You attack everyone, try to blame
 9    race, you try to blame everyone but you don't look in the
10    mirror apparently.  You don't see what everyone around you
11    sees.  And I certainly looked for and struggled to find and
12    could not find a reason why I should vary downward as has
13    been suggested by you and your counsel.  And I could not
14    find a reason to vary downward.  There is very little in
15    this record of your life to date that would cause you to
16    place that document or that story in front of someone and
17    say, look, aren't you proud of what I did or who I helped
18    or what good I've done?  It is a sorry story that I see in
19    front of me, and I would note in closing that your
20    nickname, P.T., Party Time, party time is over,
21    Mr. Willoughby.  It is prison time, a long time but a
22    deserved time.  Anything further from counsel for either
23    side?
24              MR. MARONEY:  Your Honor, you'll allow us to
25    respond then to the various requests that have been made?
```

```
 1          THE COURT:  Correct.  The oral requests here

 2   today, I would ask that you respond to that within a week

 3   if you can, please.  And I will either have a hearing, if

 4   appropriate, or rule with a prompt order on

 5   Mr. Willoughby's request.

 6          MR. MARONEY:  Thank you.

 7          MR. COCOVES:  Yes, just briefly, Judge

 8   Mr. Willoughby will be seeking new counsel for his appeal.

 9   I -- as I understand based on my experience with The Sixth

10   Circuit, I will be on counsel to file notice of appeal.  I

11   will then be assigned a case number for Mr. Willoughby.  At

12   that time I will file a motion to withdraw.  And I think

13   that that will -- those are typically granted.

14          THE COURT:  Yes.

15          MR. COCOVES:  And Mr. Willoughby will be given

16   assigned counsel by The Sixth Circuit.

17          THE COURT:  That's correct.

18          MR. COCOVES:  But it is my full intention to file

19   a notice of appeal, and once the judgment and commitment

20   order has been filed with The Court, I'll probably do it

21   that same day.

22          THE COURT:  Very good.  Then I will certainly,

23   what I may well do then is hold off until I file that final

24   judgment until I receive your response to your oral request

25   today so we can make that all part of the same package and
```

1   rule accordingly.  So the order may not follow for a few

2   days yet.  The sooner you get your response in, the sooner

3   I'll rule and the sooner we can move this case down I-75.

4           THE DEFENDANT:  So Your Honor, so does my clock

5   start -- when does that start?

6           THE COURT:  Your lawyer will know.  It's when the

7   entry of today's sentencing is filed and docketed with the

8   clerk.

9           THE DEFENDANT:  Okay.

10          THE COURT:  It doesn't start today, and it won't

11  start given what we've just discussed until sometime

12  perhaps at the earliest next week.  But your lawyer will be

13  on top of that and will advise you I'm sure.

14          THE DEFENDANT:  Okay.  And I will get appellate

15  specialist from The Sixth Circuit?

16          THE COURT:  Upon the appropriate motion, yes, you

17  will have assigned counsel for your appeal, different

18  counsel.  That's standard course.

19          THE DEFENDANT:  Thank you.

20          THE COURT:  We are adjourned.

21

22

23

24

25

C E R T I F I C A T E

        I certify that the foregoing is a correct transcript
from the record of proceedings in the above-entitled matter.


s:/Angela D. Nixon

--------------------------                   -----------

Angela D. Nixon, RPR, CRR              Date